### DAMON & BIHN *v.* EASTWICK.[*]

*(Circuit Court, E. D. Pennsylvania. October 23, 1882.)*

PATENT—PRIORITY—EMPLOYE.

> One who is the first discoverer of a process is entitled to a patent therefor, even against one in whose employ he was at the time of the discovery, and at whose request and expense he was making experiments which led to the discovery

Hearing on Bill, Answer, and Proofs.

This was a suit between parties who had respectively made application for a patent for the "manufacture of sulphate of alumina." The commissioner decided in favor of the present respondent, whereupon the complainant filed this bill. After the filing of the bill, letters patent No. 239,089 were duly issued by the commissioner to the respondent. The facts are sufficiently set forth in the opinion.

*F. T. Chambers* and *George Harding,* for complainant.

*Baldwin, Hollingsworth & Fraley,* for respondent.

BUTLER, D. J. In the year 1880 the complainants and respondent, respectively, made application for letters patent for improvements in

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

the manufacture of sulphate of alumina or aluminous cake, involving the same invention. The commissioner, after the usual hearing and examination, decided in favor of the respondent, to whom letters were accordingly issued. The complainants have filed this bill to obtain the benefit of a review, in the light, not only of the evidence before the commissioner, but also of that taken here. The respondent challenges the court's jurisdiction, as well as the claim to priority of invention. As our judgment is with the respondent on the second point, and the bill must therefore be dismissed, the former may be passed by.

Little need be said in passing on the question of priority. In January, 1878, the respondent discovered that aluminous cake, of superior quality, may be obtained from halloysite, by the process described in his patent. This process consists in mixing ground halloysite, sulphuric acid, and hydrate of alumina, in the manner and proportions stated in the specifications, whereby a high degree of heat is generated by chemical action, producing ebullition, the halloysite rapidly decomposed, the fine particles of silicia thus liberated infused throughout the entire mass, resulting in a uniform homogeneous cake. It is unnecessary to review the prior state of the art, or recount the complainants' experiments in the direction of this discovery. Mr. Damon was president of the Pennsylvania Salt Company, whose business, in part, was the manufacture of aluminous cake. Having been tendered the purchase of extensive halloysite beds in Indiana, he was anxious to ascertain how this mineral could be profitably employed. Experiments were accordingly made, which satisfied him and his company, that it was valuable for the manufacture of aluminous cake, and they bought it in the fall of 1877. It is quite clear, however, that the experiments were incomplete, and the process subsequently patented had not then been discovered. Eastwick and Bihn were the company's chemists, and it was in the further prosecution of the experiments by Mr. Eastwick, at Mr. Damon's request, that the patented process was developed. All previous efforts had fallen short. That halloysite can be dissolved by sulphuric acid, and the resultant cake rendered neutral by the addition of hydrate of alumina, had been ascertained. But this was insufficient even to suggest the subsequent discovery,—which was not simply that halloysite may be thus dissolved and hydrate of alumina employed as a neutralizing agent, but a process whereby a high degree of heat is generated, the action of the sulphuric acid accelerated, and the decomposition and final result greatly improved,—mainly by the em-

ployment of other properties of the hydrate of alumina. That the respondent was the first discoverer of this process does not seem at first to have been doubted. His proposition to obtain letters patent was, to say the least, not discouraged by Mr. Damon, who was aware of it; and the counter-claim of Damon & Bihn does not appear to have been suggested until the respondent declined to transfer his rights to the salt company.

As remarked at the outset, the only question requiring our consideration is that of priority. The justice or injustice of the respondent's taxing the salt company, if he proposes to do so, for the use of a process disclosed by experiments made at its request and expense, with its material, while in its employment, we cannot enter upon.